# IN UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# NORTHWESTERN DIVISION

| | | |
|---|---|---|
| Raaum Estates, a North Dakota General Partnership, effective January 1, 1989, by and through its Present Managing Partner, Joseph Dale Raaum a/k/a Dale Raaum, | ) ) ) ) ) | **ORDER RE MOTIONS FOR SUMMARY JUDGMENT** |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Murex Petroleum Corporation, a foreign business corporation, licensed to do business in North Dakota, | ) ) ) ) | Case No. 4:14-cv-024 |
| Defendant. | ) | |

Before the court are cross-motions for summary judgment by plaintiff and defendant. Unless otherwise indicated, the facts relied upon by the court in resolving the motions are either undisputed or have not been sufficiently controverted.

## I.  BACKGROUND

### A.  Plaintiff's interests and the claim being made against defendant

Plaintiff is a North Dakota partnership and record title owner of the fee surface estate for the following described tract in Divide County, North Dakota:

> Township 162 North, Range 101 West
> Section 15: SW¼

("subject tract").

In this action, plaintiff asserts claims against defendant for trespass, private nuisance, intentional fraud, negligent misrepresentation, constructive fraud, conversion, and unjust enrichment

1

arising out of defendant's alleged unauthorized use of the subject tract for the construction, operation, and maintenance of a commercial saltwater handling and disposal facility. Defendant denies the claims on various grounds, including that its use of the property for the purposes complained about by plaintiff was authorized.

### B. The Gulf Lease burdening plaintiff's surface estate

Plaintiff's fee interest in the subject tract is burdened by an oil and gas lease dated July 10, 1974, that was granted to the Gulf Oil Corporation covering the following tracts in Divide County:

> Township 162 North, Range 101 West
> Section 1: SE¼
> Section 8: SW¼
> Section 15 SW¼
> Section 17: W½, SE¼
> Section 20: NE¼
> Section 21: SE¼NE¼
> Section 22: N½NW¼, SE¼NW¼, NW¼NE¼, N½SW¼, SW¼NW¼
>
> Township 161 North, Range 101 West
> Section 6: NE¼SW¼, N½SE¼, SE¼NE¼

("Gulf Lease"). Defendant is a successor lessee and presently owns the lease.

The Gulf Lease provides, in pertinent part:

> * * * * That the said lessor, for an in consideration of Ten and more ($10.00+) Dollars cash in hand paid, receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed, has granted, demised, leased, and let and by these presents does grant, demise, lease, and let unto the said lessee, its successors and assigns, for the sole and only purposes of surveying by geological, geophysical and all other methods, mining and operating for oil, condensate, gas, asphalt, sulphur, and all other minerals and substances, whether similar or dissimilar, that may be produced from any well drilled by lessee on the leased premises hereinafter described, and laying pipelines and building tanks, power stations and structures thereon to produce, save and take care of said products * * * *
>     It is agreed that this lease shall remain in force for a term of ten years from date, and as long thereafter as oil, condensate, gas, asphalt, sulphur, or other minerals

or substances covered hereby, or either or any of them, is produced from said land by the lessee, its successors and assigns.

### C. The State Raaum 1-15 and Fortuna State SWD 1-16

There is a producing well located on the subject tract known as the State Raaum 1-15. The production from State Raaum 1-15 holds the Gulf Lease with respect to the subject tract.

One section over from the State Raaum 1-15 is the Fortuna State SWD 16-1. The Fortuna State SWD 16-1 is now a salt water disposal well operated by defendant. The Fortuna State SWD 16-1 is located on land owned by the State of North Dakota and is not subject to the Gulf Lease.

### D. Plaintiff's pipeline easement

On November 13, 2008, plaintiff granted defendant a right-of-way to construct and operate a pipeline for the transportation of salt water, which reads, in pertinent part, as follows:

**RIGHT-OF-WAY GRANT**

> **FOR AND IN CONSIDERATION OF** an aggregate sum equal to $12.00 per rod for each rod of pipeline constructed under the terms hereof, payable as hereafter set forth, Raaum Estates, c/o Dale Raaum, hereinafter referred to as Grantor(s), do hereby grant, warrant and convey unto: Murex Petroleum Corporation, its successors and assigns, hereinafter referred to as Grantee, the right to construct, maintain, inspect, operate, protect, repair, replace, change the size of, or remove a pipeline, any appurtenances useful and incident to the operation and protection thereof, for the transportation of salt water and any other like or unlike substance which may be moved by and through a pipeline along route to be selected by Grantee, on, over and through the following described lands, of which Grantor(s) warrant they are owners in fee simple, situated in the County of Divide, State of North Dakota, to-wit:
>
> **Township 162N, Range 101W**
> **Section 15: SW4SW4**
>
> together with the right of unimpeded ingress and egress to and from said line or lines, or any of them, for the purpose foremost. * * * *
>
> Grantee has paid the sum of $756.00 and other consideration, upon the execution hereof, receipt of which hereby acknowledged. * * * *

3

("pipeline easement").

As will be discussed in more detail later, defendant claims that this easement, either by itself or in conjunction with a separate road easement, provides it with the right to use the subject tract for its saltwater disposal operations that include the handling of salt water generated from wells other than State Raaum 1-15, including off-lease wells. Plaintiff disputes this, claiming that defendant advised that it wanted the pipeline easement so it could transport salt water generated during the recovery of oil and gas from State Raaum 1-15 to the Fortuna State SWD 16-1 well for disposal rather than trucking it. It is not clear whether defendant agrees this conversation took place, but defendant's land manager in an affidavit filed in this action states:

> 9. As set out in paragraph 5 of the Complaint, Murex worked with the managing partner of Raaum Estates, Dale Raaum, and obtained a pipeline easement which allowed Murex to pipe salt water produced from the State Raaum 1-15 oil and gas well directly to the Fortuna State SWD 16-1 on the property immediately-adjacent to the producing well. [Reference omitted].
>
> 10. This process allowed Murex to reduce the number of trucks and expenses needed to service the State Raaum 1-15 well by simply piping the water from the State Raaum 1-15 to the Fortuna State SWD 16-1. * * * *

For reasons that will become clear later, it is unnecessary to decide now whether the pipeline easement allows for the transportation of all salt water through the pipeline no matter where it is generated from, as the generality of its language may suggest, or whether there is some latent ambiguity in terms of what salt water was intended.[1]

---

[1] Defendant suggested during oral argument that, since it already had the right under the lease to install a pipeline for the transportation of salt water generated by on-lease oil production activities, there would have been no reason for defendant to have secured the pipeline easement other than to obtain the right to transport all saltwater. That may not necessarily be the case. For one thing, even with respect to the transportation of salt water generated only from the State Raaum 1-15, the pipeline easement may provide additional rights or eliminate argument over the scope of exiting ones. For example, the pipeline easement expressly permitted defendant to choose the location of the pipeline and thereby eliminated any argument that it had to chose a route that accommodated plaintiff's existing uses. Cf. Mosser v. Denbury Resources, Inc., __ F. Supp. 3d __, 2015 WL 3892013 **5-7 & n.7 (D.N.D. 2015). Also, the pipeline easement could have be taken to comply with N.D.C.C. ch. 38-11.1, which requires a mineral developer to pay for the

### E. The access road easement

On December 8, 2008, plaintiff executed a document entitled the "Access Road Consent" that provided in pertinent part as follows:

ACCESS ROAD CONSENT

For and in consideration of the sum of Five Hundred Dollars ($500.00), plus an annual rental of $500.00 (should the road be used for salt water disposal purposes), the undersigned, Raaum Estates, c/o Dale Raaum, does hereby give Murex Petroleum Corporation consent to use and maintain the access road for salt water disposal purposes. The mentioned road is located upon or across Township 162N, Range 101W, Section 15, W2SW4, County of Divide, State of North Dakota.

This consent is to remain in force through the duration of all salt water disposal activity to and from State Raaum 1-15.

It is further agreed that, Murex Petroleum Corporation will compensate the undersigned for all damages occasioned to the above described lands as a result of its operation.

("access road easement").

The parties dispute the reasons for the access road easement. Plaintiff claims he understood that all defendant was seeking was the ability to use the existing access road into the State Raaum 1-15 wellsite for the trucking of salt water generated by the well, but does not point to any particular conversation where he claims this representation was made. Defendant, on the other hand, contends plaintiff could not reasonably have been of this belief and that no such representation would have been made because defendant already had the right to the access road under the Gulf Lease for the handling of any salt water generated by the State Raaum 1-15.

What is not disputed, however, is that defendant never paid the initial $500 for the access road easement nor any annual rental thereafter. It was not until plaintiff's manager inquired about

---

use of the surface for oil production activities, in that it resolves the issue of compensation.

the amount of truck activity at the State Raaum 1-15 in the summer of 2013 and questioned whether permission had been granted for what was going on, as described in more detail in a moment, that defendant sent a check for what it believed was the amount due. Plaintiff, however, refused to accept the payment, taking the position the access road easement was not in force due to the failure to make timely payment.

**F.      Dale Raaum's visit to the subject tract in the summer of 2013 and his conversation with defendant's representative Don Kessel**

In the summer of 2013, Dale Raaum (plaintiff's managing partner) claims he noticed considerable commercial truck traffic going in and out of the State Raaum 1-15 wellsite. Raaum claims he was puzzled by this and visited the site to determine why. He states that, when he did so, he observed what appeared to be a number of fixtures and equipment devoted exclusively to saltwater disposal, including fixtures and equipment for offloading trucks and a pump capable of pumping the offloaded salt water over to the Fortuna State SWD 16-1 well for injection into the subsurface at that location.

During his visit to the site, Raaum encountered Don Kessel, a vice-president and co-founder of defendant. Raaum contends that, when he asked Kessel what was going on that necessitated all the truck traffic and the additional fixtures and equipment, Kessel responded that the State Raaum 1-15 wellsite was being used to unload salt water generated from other wells for pumping over to the Fortuna State SWD 16-1 well for injection via the pipeline. According to Raaum, when he told Kessel he was not aware plaintiff had authorized this activity, Kessel responded by stating "[w]ell, we better check it out."

G. **Defendant's proposed agreement to use the State Raaum 1-15 well site as a saltwater handling and disposal facility**

Following this exchange, defendant forwarded a letter to Raaum dated October 16, 2013, which was authored by defendant's Land Manager, Dave Elder. Enclosed with the letter was a "Salt Water Disposal and Surface Use Agreement, Salt Water Disposal Facility." The letter stated: "Upon receipt of the executed agreement we [Murex] will forward a check for prior injected water." The proposed Agreement was retroactively dated, offering an effective date of November 9, 2009, to deal with "prior injected water," and acknowledged that the State Raaum 1-15 wellsite was an "offsite water disposal" facility that was being used in conjunction with the Fortuna State SWD 16-1 well for the disposal of salt water with the State Raaum 1-15 wellsite being the primary location for disposal activities. The proposed agreement provided for the payment of $.035 for each barrel of salt water handled by the facility.

The proposed agreement was not signed by plaintiff. Plaintiff contends that, despite the lack of agreement, defendant continued to use the State Raaum 1-15 for the unloading, handling, and pumping of off-lease salt water until the commencement of the instant action. Defendant does not contest this point, but states it thought it had reached an oral understanding with plaintiff as to price prior to sending the proposed agreement and that it was not aware plaintiff was not going to agree with its proposal until it was served with the complaint in this action.

H. **Defendant's use of the State Raaum 1-15 well site for the disposal of its own waste water as well as for the commercial disposal of third-party waste water**

Defendant acknowledges it has used the State Raaum 1-15 wellsite for the unloading and handling of waste water from off-lease wells, including not only its own wells but also wells

7

operated by third parties to whom it has charged a disposal fee. In other words, defendant had established a commercial saltwater disposal operation.

Defendant acknowledges in discovery that, in 2009, a triplex pump, piping, tanks and filters were added to what already was at the State Raaum 1-15 well site for the unloading, handling, and injection of salt water via the pipeline to the Fortuna State SWD 16-1 well. The estimated cost of these facilities was $45,000. In 2013, defendant states repairs and upgrades were made to the salt water disposal facilities at the State Raaum 1-15 well site that cost $239,169.00.

While it is not entirely clear from the present record, it appears the access road to the well site was first used for the transportation, unloading, and handling of off-lease water beginning in 2010.[2] In its interrogatory answers, defendant states that, through October 2011, it received $.55 per barrel for third-party off-lease "production water" and $1.50 per barrel for "flowback or pit water" and that, from November 2011 forward, the rate increased to $.75 for production water and $1.75 for flowback or pit water.

Since the inception of its commercial disposal operations, defendant states the amount of revenue it has received from third parties for the disposal of 604,000 barrels off-lease waste water is $448,029.60. The only information in the record with respect to defendant's expenses are the capital costs referenced above and the fact that defendant pays the State of North Dakota $.10 per barrel as a disposal fee for injection at the Fortuna State SWD 16-1 well.

---

[2] Doc. No. 17-4, p. 10 (deposition testimony of defendant's land manager Carey Elder).

## II.     DISCUSSION

### A.     Defendant's rights generally

Defendant contends (and plaintiff does not appear to dispute) that it has the right under the Gulf Lease to use plaintiff's surface estate for activities related to the disposal of salt water generated from State Raaum 1-15 and any other on-lease wells of which it appears there is at least one. Defendant concedes, however, that it does not have the right to use plaintiff's surface estate for the handling of waste water generated from off-lease wells, including those owned by it, absent an agreement providing otherwise. But, even if that is not the case, the court concludes this is the governing principle. That is, absent the Gulf Lease, the pipeline easement, the access road easement, or some combination of these agreements providing otherwise, defendant's use of plaintiff's surface estate for the handling of salt water generated by off-lease wells is beyond the scope of defendant's rights under the Gulf Lease. See, e.g., Hill v. Southwestern Energy Co., No. 4:12–cv–500, 2013 WL 5423847, at * 3–4 (E.D. Ark. Sept.26, 2013) (lease did not grant right to use the property for storage of frack waste fluid from any possible source); Dick Properties, LLC v. Paul H. Bowman Trust, 221 P.3d 618, 621 (Kan. Ct. App. 2010) (lessee's implied covenant to dispose of salt water is limited to salt water produced on the lease); cf. Mosser v. Denbury Resources, Inc., __ F. Supp. 3d __, 2015 WL 3892013, *8 (D.N.D. 2015).

### B.     Defendant's motion for summary judgment

Defendant makes several arguments for why it has the right to use plaintiff's surface estate for its handling of off-lease waste water - at least insofar as it is not injecting it into the subsurface of plaintiff's property. One of the arguments that defendant makes is that the facilities it is using

9

for the unloading of trucks containing waste water and pumping it over to the Fortuna State SWD 16-1 well are "appurtenances" within the meaning of the pipeline easement. The court disagrees.

The facilities being used by defendant for the unloading, handling, and pumping of salt water occupy significant above-ground space and generate a large volume of truck traffic. Further, they are not required for the physical operation of the pipeline in the same sense as valves, inspection ports, compressors, etc. In short, a person granting the pipeline easement would not reasonably expect that "appurtenances" would encompass a commercial facility for the unloading, handling, and pumping of salt water.

A second argument that defendant makes is that the access road easement provides the requisite authority, either by itself or in conjunction with the pipeline easement. The court again disagrees. Assuming that the salt water referenced in the access road easement was intended to include off-lease waste water, all that it authorizes is use of the existing access road for the hauling of waste water, and there is nothing within the four corners of the document that suggests it was intended to encompass the wellsite and other facilities located there. If that had been the intent, surely some term would have been used other than "access road."

Moreover, assuming the access road easement became effective,[3] the court agrees with plaintiff that it had the right to treat it as having terminated because of a total failure of consideration. E.g., <u>Irish Oil and Gas, Inc. v. Riemer</u>, 2011 ND 22, ¶ 19, 794 N.W.2d 715 (2011) (distinguishing between partial and total failures of consideration and stating that the remedy for the

---

[3] One possible view of the access road easement, which did not provide for a countersignature on the part of defendant, is that it was an offer to consent to the use of the existing access road for the haulage of salt water that could be accepted by the payment of the initial $500 and, since that was never paid, there never was a binding agreement. The court need not attempt to resolve this point now (which may be a question of fact as to the intention of the parties) since plaintiff, at the very least, had the right to treat the agreement as having been terminated based on the total failure of consideration and this is sufficient for purposes of resolving the pending motions.

latter is to excuse the non-breaching party from performance under the agreement). Under the easement, the only consideration that plaintiff was to receive was the initial $500 and the possibility of annual payments of $500 thereafter if the access road was used for the hauling of salt water, along with compensation for any damage that might result from the use of the road for that purpose. And here, no attempt was made to make any payment - not even the initial $500 - until more than four years after the agreement was executed by plaintiff.

In reaching the conclusion that plaintiff could rightfully treat the access road easement as having been terminated, the court rejects defendant's argument that it could tender the amount due after its failure to make payment was brought to its attention because the agreement did not specify the exact dates upon which payment had to be made and did not explicitly state that time was of the essence. While the agreement did not set forth a date as to when the initial $500 payment had to be made, the time for performance was provided for by the gap-filling provisions of N.D.C.C. § 9-07-22, which read as follows:

> **§ 9-07-22. Rules governing time of performance when not specified**. If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act in its nature is capable of being done instantly, as for example if it consists in the payment of money only, it must be performed immediately upon the thing to be done being exactly ascertained.

Essentially, the same is true for the annual payments that were required to keep the agreement in effect. The only reasonable construction based on the interplay of the provisions of the agreement and § 9-02-22 is that the annual payments were due immediately upon the anniversary dates of the commencement of the use of the access road for hauling salt water.

Under North Dakota law, a reasonable delay in performance does not constitute a breach of a contract when time is not of the essence and what is a reasonable time for performance is

11

ordinarily a question of fact. Langer v. Bartholomay, 2008 ND 40, ¶ 20, 745 N.W.2d 649 (2008). But here, no reasonable factfinder could conclude that the several year delay in making any payment was reasonable.

In summary, because defendant has failed to demonstrate that it was entitled to use plaintiff's surface estate for the handling of off-lease waste water, its motion for summary judgment must be denied. And, at the very least, plaintiff has a claim for trespass. See, e.g., Hill v. Southwestern Energy Co., 2013 WL 5423847, at * 3–4; Cassinos v. Union Oil Co., 18 Cal. Rptr. 2d 574, 578 (Cal. Ct. App.2nd Dist. 1993) ("Cassinos"); Raven Red Ash Coal Co. v. Ball, 39 S.E.2d 231, 233 (Va. 1946) ("Raven Red Ash Coal Co.") (every use of an easement that is not necessarily included in the grant of the easement is a trespass); cf. Tibert v. Slominski, 2005 ND 34, ¶ 15-16, 692 N.W.2d 133.[4]

### C. Plaintiff's motion for summary judgment

In its cross-motion for summary judgment, plaintiff asks the court to enter judgment against defendant in the amount of $448,029.60 with respect to its claim for unjust enrichment. As noted earlier, this is the amount defendant acknowledges it received from third-parties for off-lease waste water that was unloaded at the State Raaum 1-15 wellsite and run through its facilities for disposal. During oral argument, plaintiff's attorney contended that defendant's unjust enrichment was actually greater because defendant also used plaintiff's property for the handling of its own off-lease waste

---

[4] Defendant has not argued that it consummated an agreement with plaintiff in 2013 for past and future usage of plaintiff's property for a commercial waste water disposal operation and likely for good reason since it appears no agreement was reached. In any event, in response to plaintiff's motion for partial summary judgment, sufficient evidence was not proffered to create a fact issue that an agreement was consummated, much less one that would not be subject to North Dakota's statue of frauds. This is because conclusory statements expressing a unilateral belief that an understanding with respect to price was reached are not enough (even if the court could somehow divine the remaining terms) and, in fact, are of questionable relevancy with respect to whether a contract was formed. See, e.g., National Bank of Harvey v. International Harvester Co., 421 N.W.2d 799, 804 (N.D.1988) ("It is the outward manifestations of assent which govern, not the secret intentions of the parties.").

water, but stated plaintiff is willing to accept this lesser amount if the matter can be resolved on summary judgment.

The North Dakota Supreme Court has outlined the general principles governing unjust enrichment as follows:

> "Unjust enrichment is an equitable doctrine based upon a quasi or constructive contract implied by law to prevent a person from being unjustly enriched at the expense of another." Ritter, Laber and Associates, Inc. v. Koch Oil, Inc., 2004 ND 117, ¶ 26, 680 N.W.2d 634. "The doctrine serves as a basis for requiring restitution of benefits conferred 'in the absence of an expressed or implied in fact contract.' ... Unjust enrichment requires: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment and impoverishment; and (5) an absence of remedy provided by law." Id. (quoting Midland Diesel Serv. & Engine Co. v. Sivertson, 307 N.W.2d 555, 557 (N.D.1981)). A determination of unjust enrichment is a conclusion of law and fully reviewable on appeal. Id.

Broten v. Broten, 2015 ND 127, ¶ 22, 863 N.W.2d 902.

Defendant argues that unjust enrichment is not a viable cause of action in this instance because, according to defendant, the relationship between the parties is governed by express contract. With respect to this argument, the court has already concluded that the pipeline and access road easements do not cover the commercial saltwater disposal activity and facilities at the wellsite. This leaves only the Gulf Lease.

While the Gulf Lease does authorize defendant to use and occupy plaintiff's surface estate including the wellsite, the authorization is limited to the activities spelled out in the lease, which do not include the use of plaintiff's property for the handling of off-lease waste water. Further, there is nothing in the lease itself that constitutes an agreement about what should happen if plaintiff's property is used for an impermissible purpose.

In short, the Gulf Lease does not govern what happened here. Consequently, it is not a bar to recovery for unjust enrichment. Hill v. Southwestern Energy Co., 2013 WL 5423847, at * 4 (concluding that a claim for unjust enrichment could go forward where waste water had migrated through subsurface strata to beneath plaintiff's property after injection in defendant's nearby wells because defendant's oil and gas lease covering plaintiff's property did not authorize the storage of off-lease waste water); see also Strand Energy Corp. v. Columbia Gas Transmission Corp., 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005) ("[While no implied contract may conflict with terms of an express contract, where the express contract between the parties does not apply or subsequent conduct not covered by the express contract may support an implied agreement, unjust enrichment may be asserted."); Nelson v. Gish, 644 P.2d 980, 982 (Idaho Ct. App. 1982) (plaintiff's claim for unjust enrichment was extrinsic to a partnership agreement between the parties); cf. United States v. Applied Pharmacy Consultants, 182 F.3d 603, 606-609 (8th Cir. 1999); see generally 66 Am. Jur. 2d Restitution and Implied Contracts § 23 (database updated as of August 2015) ("Although there can be no implied contract on a point fully covered by an express contract and in direct conflict therewith, there may be an implied contract on a point not covered by an express contract.").

More troublesome is the question of whether the existence of a legal claim for trespass prohibits recovery for unjust enrichment because, as noted above, one of the often-stated prerequisites for a claim of unjust enrichment in North Dakota is the absence of a legal remedy. Generally speaking, courts in other jurisdictions are divided over whether the availability of a claim for trespass bars an alternative claim for unjust enrichment. Compare, e.g., Barfield v. Sho-Me Power Elec. Co-op., 10 F. Supp. 3d 997, 1023-26 (W.D. Mo. 2014) reaffirmed at 2015 WL 5022836, at *16 (Aug. 21, 2015) (the availability of trespass claim not a bar under to unjust enrichment under

14

Missouri law); Cassinos, 18 Cal. Rptr. 2d at 584 578 (plaintiff can waive the tort and sue on an implied contract for unjust enrichment in cases of wrongful occupation of property); Raven Red Ash Coal Co., 39 S.E.2d 231 (reaching the same conclusion with respect to facts somewhat analogous to those presented here) with Corsello v. Verizon New York, Inc., 967 N.E.2d 1177, 1184 (N.Y. Ct. App. 2012) (concluding that the existence of a claim for trespass was a bar, stating "[a]n unjust enrichment claim is not available where it simply duplicates or replaces a conventional contract or tort claim."); cf. Harris Group, Inc. v. Robinson, 209 P.3d 1188, 1205-06 (Colo Ct. App. 2009) (concluding that unjust enrichment is not always barred by the availability of a tort remedy at law, unlike what usually is the case when there is a legal remedy for breach of contract, because of the differences between the two types of claims). The American Law Institute has taken the position that a claim for restitution can be made in instances of trespass, conversion, and other like invasions of similarly protected interests, which can include recovery for wrongful enrichment. Restatement (Third) of Restitution and Unjust Enrichment § 40 (2011).

While the North Dakota Supreme Court has often repeated that the absence of a legal remedy is one of the prerequisites of a claim for unjust enrichment, it did state in footnote in A & A Metal Buildings v. I-S, Inc., 274 N.W.2d 183, 189 (N.D.1978) that "a party may obtain an equitable remedy even if he as a remedy at law if the equitable remedy is better adjusted to rendering complete justice." In support, the court cited to its prior decision in Graven v. Bachus, 163 N.W.2d 320 (N.D. 1968), where it held that an equitable remedy of payment of money was more appropriate than the mandatory injunction that was otherwise required by law for a trespass caused by an encroaching wall.

Then, in In re Estate of Hill, 492 N.W.2d 288 (N.D. 1992), the court elaborated further on the point that, in some situations, an equitable remedy may be more appropriate than a legal one. The court stated:

> There is authority from other jurisdictions and some North Dakota case law that for a party to be entitled to equitable relief, that relief must be better adjusted to rendering complete justice than a legal remedy. A & A Metal Bldgs. v. I-S, Inc., 274 N.W.2d 183 (N.D.1978); Graven v. Backus, 163 N.W.2d 320, 327 (N.D.1968) ["... that the plaintiff may have a remedy at law by an action for damages does not prohibit an equity court from assuming jurisdiction if the equitable remedy is better adapted to render a more perfect and complete justice than the remedy at law."] [emphasis added]; Warren Tool Co. v. Stephenson, 11 Mich.App. 274, 161 N.W.2d 133, 147 (1968) ["... the existence of a legal remedy does not prevent equity from decreeing a more complete remedy."] [emphasis added]. The modern phraseology trend in North Dakota cases and among scholars is that if there is a legal remedy equally adjusted to rendering complete justice, the court will not generally apply equitable relief. Omlid v. Sweeney, 484 N.W.2d 486, 490 (N.D.1992) ["A fundamental principle of equity is that a 'party is not entitled to equitable relief if there is a remedy provided by law which is equally adjusted to rendering complete justice.' "] [emphasis added]; D.C. Trautman Co. v. Fargo Excavating Co., 380 N.W.2d 644 (N.D.1986); State v. Hooker, 87 N.W.2d 337 (N.D.1957); McGurren v. City of Fargo, 66 N.W.2d 207 (N.D.1954) ["But a legal remedy in order to be adequate in the sense involved in determining the jurisdiction of equity must be as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity."] [emphasis added]; Dobbs, Handbook on the Law of Remedies § 2.5, p. 57 (1973). No matter how one chooses to phrase it ["better" or "equal"], the result is the same.

Id. at 295 n.3.

More recently, however, the North Dakota Supreme Court suggested in McColl Farms, LLC v. Pflaum that the remedy of unjust enrichment would be available in that case only if the conversion remedy failed. The court stated:

> [¶ 19] The district court dismissed McColl Farms' unjust enrichment claim concluding it could not prove an absence of a remedy at law, because the conversion claim was an available remedy at law. However, a claim should not be dismissed under N.D.R.Civ.P. 12(b)(6), unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Bala v. State, 2010 ND 164, ¶ 7, 787 N.W.2d 761. We will affirm a dismissal of the claim

16

> only if we cannot discern a potential for proof to support it. Moseng, 2012 ND 220, ¶ 5, 822 N.W.2d 464.
>
> [¶ 20] Although McColl Farms also sued Pflaum for conversion, it was possible there would be an absence of a remedy at law and McColl Farms would be able to prove a claim for unjust enrichment. A claim of conversion has different elements from a claim of unjust enrichment. "Conversion consists of a tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner." Ritter, 2004 ND 117, at ¶ 11, 680 N.W.2d 634. "Conversion requires an intent to exercise control or interfere with the use of property to such a degree as to require a forced sale of the plaintiff's interest in the [property] to the defendant." Id. A conversion claim, unlike an unjust enrichment claim, requires the plaintiff prove the defendant had an intent to deprive the plaintiff of the property. See id. The key to a conversion claim is not that the defendant acquired the plaintiff's property, but that the defendant wrongfully deprived the plaintiff of the property. Id. The two types of claims are different and it was possible McColl Farms would fail to prove its claim for conversion, leaving it without a remedy provided by law and the ability to prove its claim for unjust enrichment. See In re Estate of Hill, 492 N.W.2d 288, 295–96 (N.D.1992) (court should consider possible recovery under an equitable remedy if the legal remedy fails). We conclude the court erred in dismissing the unjust enrichment claim solely based on its determination that a remedy at law was available.

2013 ND 169, ¶¶ 19-20, 837 N.W.2d 359. On the other hand, the court did not explicitly retreat from what it stated earlier about the appropriateness of an equitable remedy in cases where the legal remedy is inadequate.

At this point, the court will deny plaintiff's cross-motion for summary judgment for two reasons. First, even if the court was to conclude that recovery based on unjust enrichment would be appropriate, plaintiff has failed to demonstrate that defendant was enriched in the amount being requested now since that amount appears to be only a gross revenue number and the record indicates there were expenses. In other words, even if recovery of defendant's profit would be an appropriate

17

measure of any wrongful enrichment in this instance,[5] there appears to be a material dispute as to what would be an appropriate amount. Second, given the uncertainty with respect to whether unjust enrichment is an appropriate form of relief in this case and the fact that the court may have to compare the relief that is otherwise available to plaintiff as a matter of law to make the final decision, the court will allow plaintiff to present damages evidence with respect to both the legal claim of trespass and the equitable claim of unjust enrichment. Then, after allowing the parties additional briefing on the subject, the court will decide whether unjust enrichment is an appropriate remedy and, if so, whether plaintiff should be permitted to elect between the legal and equitable remedies. See Broten v. Broten, 2015 ND 127, ¶ 16 ("A trial court does not abuse its discretion by postponing the election of remedies until final judgment is entered.") (internal quotations and citing reference omitted).

### III.    CONCLUSION AND ORDER

Based on the foregoing, the cross-motions for summary judgment (Doc. Nos. 19 and 21) are **DENIED**.

**IT IS SO ORDERED**.

Dated this 28th day of September, 2015.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr., Magistrate Judge
United States District Court

---

[5] While disgorgement of profits is a recognized remedy in cases of unjust enrichment, it is not the only one. See generally Restatement (Third) of Restitution and Unjust Enrichment ch. 7 (2011) For example, in several of the cases cited above, appeals courts have upheld awards based upon what it would have cost the defendant at market rates to avoid the tortious conduct. See e.g., Cassinos, 18 Cal. Rptr. 2d at 584-585 (upholding an award based on what it would have cost defendant to dispose of drilling waste water at commercial disposal sites in a case of underground trespass by defendant's waste water); Raven Red Ash Coal Co. v. Ball, (upholding a jury award for the wrongful use of plaintiff's property for the haulage of coal that appears to have been based on testimony reflecting the market cost to defendant for obtaining an easement for that purpose); see also Ark Land Co. v. Harlan Lee Land, LLC, No. 6:10-cv-9, 2011 WL 5301788 (E.D. Ky Oct. 31, 2011); Mullins v. Equitable Production Co., No. 2:03-cv-00001, 2003 WL 21754819, at **3-4 (W.D. Vir. July 29, 2003).